HOME INSURANCE COMPANY *vs.* UNION TRUST COMPANY.

JUNE 13, 1917.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

(1)  *Fire Insurance.  Conditions Subsequent.  Covenants.  Provisos.*

Where property was insured, loss payable to trustee under policy containing clause "provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.  Provided also that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard, which shall come to the knowledge of said mortgagee (or trustee) . . . and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void."

*Held,* that the word "provided" in instruments of this character had a well-settled meaning, and construed in its natural and primary sense imported a condition and not an agreement, and there was nothing in the context which required it to be construed as a covenant.

*Held,* further, that both clauses of the proviso were subsidiary to the main part of the mortgagee clause, and the words "otherwise the policy shall be null and void" were applicable to, and should be read with both provisos, and so read made both clauses conditions subsequent.

*Held,* further, that the mortgagee clause constituted a separate contract between the company and mortgagee, entered into at the same time as the contract between the company and the mortgagor and based upon the same consideration, but it would not become active until some default by non-payment of the premium or otherwise, had been made by mortgagor; but on coming into effect, the rights of mortgagee against the company would be subject to certain conditions subsequent, one of these being that if any part of the premium remained unpaid, mortgagee must pay it on demand, or it would lose its rights under its contract, without, however, being under any obligation to pay the unpaid premium if it preferred to let the policy lapse.

ACTION to recover certain insurance premiums. Certified on agreed statement of facts under Gen. Laws 1909, cap. 298, § 4.

STEARNS, J.    This is an action to recover certain premiums upon two policies of fire insurance issued by the plaintiff, on hotel and other property of The Mathewson Co. in Narragansett, R. I.    The case was certified to this court on an agreed statement of facts pursuant to the provisions of Sec. 4, Chap. 298, Gen. Laws, R. I. 1909.

The material facts are as follows:    May 1, 1905, The Mathewson Co. made a deed of trust conveying certain real and personal property to the Manufacturers Trust Company, to secure one hundred and twenty thousand dollars of bonds.    Later the defendant, Union Trust Company, became trustee under said trust deed in place of the Manufacturers Trust Company.

The trust deed contains the following covenants of The Mathewson Co.: "And the company covenants and agrees with The Trustee that insurance against loss by fire shall be kept and maintained on the buildings and personal property liable to destruction or damage by fire covered by this indenture, in such insurance companies as The Trustee shall approve, in a sum not less

than One Hundred and Twenty Thousand Dollars ($120,000) and that the policies of such insurance shall be assigned and transferred or made payable in case of loss to The Trustee as collateral security hereto.''

The trust deed contains certain conditions upon which the trustee accepts the trusts, among others the following:

'' Second. It shall be no part of the duty of The Trustee to record this indenture as a mortgage of real or personal property nor shall it be any part of the duty of The Trustee to effect insurance against fire or other damage to any portion of the property hereby mortgaged, or to renew any policies of fire or other insurance or to keep informed or advised as to the payment of taxes or assessments of or upon the mortgaged premises and property, or to require the payment of such taxes or assessments, but The Company shall and will perform all the acts above mentioned necessary to fully protect the bonds described herein. The Trustee may however, in its discretion, at the expense of The Company do any or all of the matters or things in this paragraph set forth, or procure the same to be done.''

'' Fourth. The Trustee shall be under no obligation or duty to perform any act hereunder, or to defend any suit in respect hereof unless first indemnified to its satisfaction.''

On or about July 29, 1914, the plaintiff issued a policy of fire insurance for $11,000 to The Mathewson Co. for the term of one year from August 1, 1914, making the same payable in case of loss to the Union Trust Co., Trustee, as its interest might appear, and annexed to said policy a certain contract or rider which contained the standard mortgage clause, as follows:

'' Loss or damage, if any, under this policy, shall be payable to Union Trust Co., of Providence, R. I., Trustee mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee)

24

only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

" Provided also that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void."

The premium on this policy was $492.80 and The Mathewson Co. on various dates between July 7, 1915, and August 28, 1915, paid on account thereof $146.66, and there was further credited upon and deducted from said premium by the plaintiff company $34.10, because of certain improvements made in the premises, by reason of which the rate was reduced. The balance due and sued for on this premium is $312.04. About the 29th day of July, 1915, the plaintiff issued another policy to said Mathewson Co. for the term of one year from August 1, 1915, for the same sum, made payable in the same way with a similar rider, the premium for which was four hundred and fifty-eight and 70/100 ($458.70) dollars. The Mathewson Co. did not pay any part of this premium, and in October or November, 1915, the plaintiff asked the Union Trust Co. to pay this premium and threatened to cancel the policy if said premium was not paid. The premium was not paid, and on or about

November 30, 1915, in accordance with the provisions of the policy, the plaintiff gave five days' notice of cancellation of said policy to the insured and ten days' notice to the defendant, the mortgagee; at the expiration of said notices, the policy was cancelled according to its terms, and the plaintiff credited upon the amount of said premium remaining unpaid the sum of $294.53, and the balance of said premium ($164.17), which is the *pro rata* premium for the period during which said policy was in force, remains unpaid. Formal demand was made on or about December 24, 1915, upon the Union Trust Company for the payment of these balances and that company refused to pay said balances, and the parties now ask this court to determine whether the defendant is liable to the plaintiff for either of the sums above mentioned.

The questions at issue are as follows:

I. Did the defendant, under the mortgagee clause attached to each policy as a rider, promise to pay the premium on demand in case the mortgagor should neglect to pay it?

II. If the defendant did so promise, did the delay on the part of the insurance company in making demand for payment of the premiums, release the defendant from liability under its promise?

When the plaintiff issued these policies, by reason of the attachment of the riders thereto, it entered into two separate and independent contracts of indemnity, relating to the same subject but applying to different interests therein: 1. A contract with the owner subject to certain conditions appropriate to the relation of owner to insurer. 2. A contract between the insurer and the mortgagee only, becoming effectual when the owner failed to pay premiums or violated the conditions of the policy, and concerning which the relation of the original insured to the property, or his acts or neglect, are of no account.

When the first contract failed, or if it never attached, this second contract began and proceeded subject to its own conditions and limitations. See *Smith* v. *Union Insurance Co.,* 25 R. I. 260.

The plaintiff claims that the words in the mortgage clause " Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same " import a contract, by the mortgagee to pay the premium, if the mortgagor does not pay it. The defendant claims that this clause should be construed as a condition and not as an agreement.

(1)    To decide this question we must determine the true meaning of the clause in question. The word " Provided " in instruments of this character in general has a well-settled legal meaning, and construed in its natural and primary sense imports a condition and not an agreement.

In Bouvier's Law Dictionary the following definition is given: "A proviso always implies a condition unless subsequent words change it to a covenant."

In *Rich & Hotchkiss* v. *Atwater,* 16 Conn. 409, at page 419, the court says " The proviso, it is said, requires such a construction. There has been much nice discussion upon the word ' provided.' 2 Co. 72; Cro. Eliz. 242, 385, 486, 560; Cro. Car. 128. It is certain, as is said by Judge Swift, that there is no word more proper to express a condition than this word ' provided '; and it shall always be so taken, unless it appears from the context to be the intent of the parties that it shall constitute a covenant."

There is nothing in the context of this instrument which requires a construction of this clause as a covenant. The parties have used the technical word " Provided " to which the courts in numerous cases have applied a certain well-known construction. The mortgagee clause in question is in the standard form and presumably was

carefully worded by experienced lawyers who were familiar with the customary legal construction of the word. Had the intention been that the word " Provided " as used in this clause should not be given its primary legal meaning and effect, but that the clause should be construed as a covenant rather than a condition, any possible ambiguity could easily have been removed by the addition of a few words such as " and it is agreed " or any similar phrase. In *Hastings et al.* v. *Westchester Fire Ins. Co.*, 73 N. Y. 141, decided in 1878, the mortgagee clause in the policy of fire insurance on which suit was brought, contained the following words, " It is also provided and agreed." The omission of such specific words of agreement in later forms, such as the one now in question, is of some significance.

It is admitted by the plaintiff in its reply brief, that the second clause in the rider, to wit, " PROVIDED also that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy ", *etc.,* is a strict technical condition subsequent. It is argued that the fact that the phrase " otherwise this policy shall be null and void " is found only at the end of this proviso, and that it is separated from the rest of the clause only by a semicolon, and that the preceding proviso ends with a period, indicates that the words quoted above are intended to qualify the second proviso only and not the first, and that the second proviso is independent of the first and is of a different nature. The effect of this argument is much weakened by the fact that the second proviso, which is of the same general character as the first, follows it immediately, and is connected with it by the words " Provided also ". We think both clauses are subsidiary to the main part of the mortgagee clause, and that the words " otherwise the policy shall be null and void " is applicable to, and should be read with both pro-

visos; so read its effect clearly makes both clauses conditions subsequent.

Under this construction of the two provisos, the effect of the mortgagee clause as a whole would be as follows: It would, as stated in the case of *Smith v. Home Insurance Company, supra,* constitute a separate contract between the insurance company and the mortgagee, entered into at the same time as the contract between the insurance company and the mortgagor and based upon the same consideration. While it would come into existence as soon as the policy was delivered, it would not become active until some default, by nonpayment of the premium or otherwise, had been made by the mortgagor. Then it would come into full force and effect and would give the mortgagee an independent right against the insurance company, which would, however, be subject to certain conditions subsequent. One of these would be that if any part of the premium remained unpaid, the mortgagee would have to pay it upon demand or it would lose its rights under its independent contract, without being under any obligation to pay the unpaid premium if it preferred to let the policy lapse.

This construction protects fairly the interests of the insurance company and the mortgagee. The insurance company is entitled to the payment of the premium, on the delivery of the policy, and consequently has the power to protect itself fully, without recourse to the mortgagee. It is in a position, at all times, with full knowledge of the facts in regard to the payment of premiums, to call for payment from the mortgagor, and if dissatisfied, can cancel the policy by giving the prescribed notice. On the other hand, the mortgagee, in many cases, has no means of knowing whether the premium has been paid, and as the insurance company must first make demand on the mortgagee for payment before rights of the mortgagee can be affected by the failure of the mortgagor to pay, it

would impose an unreasonable burden on the mortgagee to require it to keep constant watch on the condition of the account between the insurance company and the mortgagor in order to protect itself from liability for unpaid premiums.

In this particular case it seems to be clear that the mortgagee did not intend or understand that it was bound unconditionally on demand to pay to the plaintiff the premiums on failure on part of the mortgagor to pay. By the second clause of the trust deed quoted above, it is specifically provided that it shall be no part of the duty of the trustee to insure the property or to keep informed as to the payment of assessments, *etc.*, against the same. From the conduct of the insurance company it also seems ·clear that the company did not consider that the mortgagee was liable. The only payments on the policy issued August 1, 1914, were made between July 7, 1915, and August 28, 1915. No request for payment during the life of this policy was made on the mortgagee. So far as appears the first intimation that the trustee had that the mortgagor was in arrears was in October or November, 1915, when the plaintiff *asked* the trustee to pay the premium on the policy which had been issued August 1, 1915, and threat was made to cancel said policy unless the premium was paid. Not until on or about December 24, 1915, and after it had cancelled the policy, did the insurance company make *demand* upon the mortgagee for payment.

The following cases support the contention of the plaintiff that the clause in question imports an agreement. *Boston Safe Deposit & Trust Co.* v. *Thomas,* 59 Kan. 470; *St. Paul Fire Ins. Co.* v. *Upton,* 2 No. Dakota 229. Opposed to these cases are the cases of *Ormsby* v. *Phenix Ins. Co.,* 5 So. Dakota 72, and *Coykendall* v. *Blackmer,* 161 App. Div. (N. Y.) 11, which hold that the clause in question is a condition and not a covenant. The case of *Coy-*

*kendall* v. *Blackmer* is a recent case, decided in 1914, in which the court carefully considered the cases *St. Paul Fire & Marine Ins. Co.* v. *Upton* and *Boston Safe Deposit & Trust Co.* v. *Thomas, supra,* and declined to follow them. We agree with the decision in the *Coykendall* case, *supra,* that the provision in question should be construed as a condition rather than a covenant.

Inasmuch as this construction is decisive of the case, it is unnecessary to consider the second question in regard to the effect of the delay in making demand on the mortgagee for payment.

Decision for defendant for costs.

The papers in said cause with our decision certified thereon are ordered to be sent back to the Superior Court for the entry of final judgment upon the decision.

*Mumford, Huddy & Emerson, Charles C. Mumford,* for plaintiff.

*Gardner, Pirce & Thornley,* for defendant.

*Erving T. Arnold,* of counsel.