**OWENS–CORNING FIBERGLAS CORPORATION**

v.

**ALLSTATE INSURANCE COMPANY et al.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI90–2521.

Decided Feb. 25, 1993.

*Connelly, Soutar & Jackson, William M. Connelly* and *Steven Smith; Covington & Burling, Mitchell F. Dolin, Jackson Sharman* and *Eric Lasker; Davis & Young Co., L.P.A.,* and *Martin J. Murphy,* for Owens–Corning Fiberglas Corporation.

*Shumaker, Loop & Kendrick* and *Peter Silverman; Sullivan, Ward, Bone, Tyler, Fiott & Asher, Thomas Slavin* and *Thomas Auth; Mayer, Brown & Platt* and *Michael Gill;* and *Joseph Walsh,* for Protective National Insurance Company.

*Gallagher, Sharp, Fulton & Norman, Alton L. Stephens* and *Robert H. Eddy,* for Republic Insurance Company.

---

RICHARD W. KNEPPER, Judge.

■ This matter is before the court on the motions for summary judgment filed by Republic Insurance Company ("Republic") and Protective National Insurance Company ("Protective"). Although these motions are premised on "asbestos exclusions," the record also contains evidence that the insurers consented to "subscription policies" which did not exclude asbestos from general liability coverage. Therefore, upon review of the record, the transcript of the oral

argument of November 19, 1992,[1] as well as the applicable law, the court finds the motions are not well taken.

By way of background, Republic and Protective have moved for summary judgment, contending that Owens–Corning Fiberglas's ("OCF's") underlying asbestos liabilities are not covered because of "asbestos exclusions." Essentially, the insurers insist that their policies "follow form" to an underlying policy issued by Transit Casualty Company ("Transit"). The Transit policy, moreover, has an endorsement attached to it which clearly excludes coverage for liability arising from asbestos. This fact is undisputed.

OCF, however, points to a "subscription policy" which, OCF insists, is binding. The subscription policy, it would appear, *includes* asbestos in the list of coverage. OCF, further, has flooded the docket with deposition testimony, various underwriters' files, and the like in support of its position that the parties' intent was, indeed, to include asbestos coverage.

Apparently, it is common practice for a company's insurance purchasing agent to compile a "subscription policy," outlining all of the insurers and the terms of the policies. OCF has submitted deposition testimony and numerous affidavits supporting this assertion. Evidently, the subscription policy, also referred to as a "subscription form" and "subscription agreement," is prepared after insurance is purchased, and the purpose of the subscription form is to ensure consistency in coverage and to be a sort of summary of coverage. OCF has presented testimony that, before executing an insurance policy, each insurer was notified that it would also be signing onto the subscription policy. OCF, thus, raises the inference that the actual policy and the subscription policy are to be read in conjunction with one another.

After the initial policies were signed, OCF's agent mailed copies of the "subscription policies" to representatives of all the insurers. Attached to these subscription policies were (1) a copy of the Transit Policy (along with the endorsement excluding asbestos coverage) and (2) "Declaration pages."

The subscription policy sets forth five "layers" of coverage (layers II–VI, with Transit being layer I). Second, it states that it "follows form" to the Transit policy (which excludes asbestos coverage, subject to certain exceptions). Third, the subscription policy lists the critical exceptions:

"It is further agreed that the companies participating in Layers *II* and *VI* do *not* provide coverage for Asbestos Products Liability. However, the participating companies in Layers III, IV and V *do* agree to insure against the hazard of

---

1. Protective specifically waived oral argument.

Asbestos Products Liability excess of underlying [*i.e.,* Transit] limits * * *." (Emphasis added.)

The "declaration pages" are addenda to the subscription policy. Each declaration page contains the pertinent terms of each policy, organized in order of layer. *The Republic Declaration Pages characterize the two Republic policies as level III and IV policies; the Protective National policy, moreover, is classified as a level IV policy.* It, thus, would appear that these policies *do* provide asbestos coverage.

OCF's position, moreover, is bolstered by two additional facts. First, each aforementioned declaration page is signed by a representative of the *insurer* and returned to OCF's purchasing agent. This includes the Republic and Protective declaration pages at issue. Second, consistent with the provisions of the subscription policy, the declaration pages for the layer II and VI insurers contain explicit asbestos exclusions. The Republic and Protective declaration pages, on the other hand, do not contain these clauses.

Republic, however, argues that the subscription policy is not binding and offers several theories in support. First, Republic, relying on two Ohio cases, argues that the "subscription policy" does not legally modify the actual insurance policy. See *J.R. Roberts & Son v. Natl. Ins. Co. of Cincinnati* (1914), 2 Ohio App. 463; *Free v. Auto–Owners Ins. Co.* (Oct. 28, 1988), Lucas App. No. L–88–042, unreported, 1988 WL 114333. These authorities, however, can be readily dismissed, as they both discuss policy *renewals.* Specifically, they hold that the insurer (as opposed to the insured) has the burden of proving that the insured agreed to the new terms. Here, however, there is deposition testimony from which one can infer that the subscription policy is not a policy *renewal* but rather is to be read in conjunction with the original policy when determining terms and conditions of coverage. Thus, the issue is not whether the parties have agreed to a *change of terms.* Rather, the question is what exactly the terms and conditions are.

In its second argument, Republic claims that the subscription form is ambiguous, and that since an OCF agent drafted it, any questions must be construed in Republic's favor. In support of this proposition, Republic cites *Gomolka v. State Auto Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 168, 24 O.O.3d 274, 275, 436 N.E.2d 1347, 1348; and *George H. Olmsted & Co. v. Metro. Life Ins. Co.* (1928), 118 Ohio St. 421, 426, 161 N.E. 276, 277. The problem, of course, is that the language of the *subscription policy* (the document drafted by OCF) is not ambiguous nor, for that matter, is the *original* policy's language. The ambiguity, instead, involves whether the original policy is to be read alone or in conjunction with the "subscription policy." *Gomolka* and *Olmsted,* therefore, are inapposite.

■  For its third offering, Republic argues that the subscription policy is not binding because it was not filed with the Ohio Department of Insurance pursuant to R.C. 3937.03(H).  As OCF notes in its memorandum in opposition, however, R.C. Chapter 3937 imposes this requirement on the insurer, not the insured. R.C. 3937.03(A);  R.C. 3937.03(H).  This argument, therefore, is without merit.

Finally, Republic attempts to argue the facts.  Specifically, it cites deposition testimony of OCF agents that the subscription policies are not binding and are not even insurance policies.  Republic also cites allegedly contradictory testimony on the part of OCF's in-house insurance director, George Gominger.[2]  Republic then notes that, on earlier occasions, Republic would not insure asbestos liabilities.  Next, Republic refers to deposition testimony of OCF's own agents in which they opine that the "subscription policy" is not an insurance policy.

Nonetheless, the pertinent declaration pages are signed by OCF's own agent. When asked about this at deposition, the agent conceded that (1) she could have read the correspondence more closely, and (2) in normal circumstances, in exchange for an exclusion (*i.e.,* less coverage), insurers will issue a refund (as has been done with other policies).  The inference to be made from the second point is that since no evidence exists of a refund to OCF, the parties did not intend to exclude asbestos from coverage.  Summary judgment, here, is inappropriate, as triable issues exist.  *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 13 OBR 8, 467 N.E.2d 1378.

### JOURNAL ENTRY

It is ORDERED, ADJUDGED and DECREED that the motions for summary judgment filed by defendants Republic Insurance Company and Protective National Insurance Company are not well taken and are therefore denied.

*Motions denied.*

―――――――

2.  Specifically, Republic contends that "Mr. Gominger's verbal gymnastics are of gold medal caliber."  See Republic's brief of January 30, 1992, at 24.